Eagen J. Zygmont *v.* Planning and Zoning Commission of the Town of Greenwich

King, C. J., Murphy, Alcorn, Comley and Shannon, Js.

Argued March 2—decided April 27, 1965

Francis X. Lennon, Jr., with whom was Martin L. Nigro, for the appellant (plaintiff).

Stewart H. Jones, with whom, on the brief, was A. William Mottolese, for the appellee (defendant).

SHANNON, J. The plaintiff appealed to the Court of Common Pleas from the denial by the planning and zoning commission of Greenwich of his application to change the classification of his property from an RA-4 zone to an R-20 zone. The land in question, comprising approximately thirteen acres in extent, is on the south side of Banksville Road in a section known as Banksville, which occupies the extreme northeastern corner of Greenwich. The court rendered judgment dismissing the appeal, and the plaintiff has appealed from that judgment.

The plaintiff and his family before him have owned and lived on the property for many years. This property has been zoned RA-4, four acres, single residence, since 1947, when the Greenwich regulations went into effect. The property is bounded entirely on the south and partly on the east by property similarly classified in the RA-4 zone. It is bounded on the north by Banksville Road and on the east in part by Taconic Road. The first road em-

braces the New York state line, and the second, the Stamford town line. The westerly boundary of the plaintiff's property is land owned by the Banksville Community House, Inc., improved with a community center, and used for recreational purposes and other community activities. That property and the land extending to the west and to the south lie in an R-20 zone, which is limited to single residences on lots having a minimum area of 20,000 square feet. This area to the west of the plaintiff's property is also part of the Banksville section and contains more than sixty houses of small and moderate size. Land in a half-acre zone and land in an industrial zone in North Castle, New York, are on the opposite side of Banksville Road across from the plaintiff's property. Opposite the property, on the easterly side of Taconic Road, Stamford zoning requires two acres per single-family dwelling. The houses in this area are small and comparable to those in the Banksville community. The plaintiff offered testimony that the property is close to a shopping center and a church, and although it is some distance from schools, bus service is available for students. It is within easy access of the Banksville Volunteer Fire Department in New York. The plaintiff's land is not serviced by water or sewer lines.

Four to five acres of the thirteen acres in the plaintiff's parcel are swampy and covered by one or two feet of silt. In order to develop the full twenty-five lots proposed, the swamp would have to be drained and the ground level raised a minimum of five feet by new fill. A good drainage system would be required, the drainage of the land being generally to the south.

The defendant commission in its capacity as a planning commission prepared a report on its plan

of development for land use in February, 1963, and attached a land use map. The report indicated that part of the plaintiff's property was appropriate for development in the proposed medium density category, two to twelve families per acre. The report went on to say, however, that "[m]uch of the land in the 'medium' density category may not be suitable for development until the utilities are provided." Neither the plan nor the map had become effective at the time of the public hearing before the commission.

The commission denied the application for a change to an R-20 zone and gave several reasons for its action. As far as appears, the commission considered each of the reasons given sufficient to warrant its action. If any one of them supports the action of the commission, the plaintiff must fail in his appeal. *Crescent Development Corporation* v. *Planning Commission,* 148 Conn. 145, 150, 168 A.2d 547; *Senior* v. *Zoning Commission,* 146 Conn. 531, 532, 153 A.2d 415, appeal dismissed, 363 U.S. 143, 80 S. Ct. 1083, 4 L. Ed. 2d 1145. One reason was that the property is not uniform and in no event can the southern portion of the property be economically developed into lots of 20,000 square feet each. The plaintiff proposed a development of twenty-five lots, each with a separate well and sewage system, if his application was granted.

On its face, the plan is impractical. The exhibit showing the proposed development offered by the plaintiff's expert, which was based merely on preliminary soil tests, indicated that the plan could be accomplished without endangering the public health and safety and without violating the Greenwich Sanitary Code but only by dividing the parcel into nineteen lots rather than the twenty-five proposed by

the plaintiff and permitted in an R-20 zone. Even then the sewage systems of one-third of the lots would be lying in land, presently swamp, which could be rendered usable only by an extensive filling operation. Under this proposal, also, there would be only one possible location for the necessary well on each lot which would satisfy the requirement of the Greenwich Sanitary Code that no well be within seventy-five feet of a sewage drainage field. At that, there would be three wells within fifty feet of each other and another two wells within twenty-five feet of each other.

The commission also had before it evidence less favorable to the plaintiff indicating that good judgment dictates that more than the minimum legal area be available for the wells in case of the inadequacy of the water supply and that the subsoil conditions were not satisfactory to accommodate adequate leaching fields without endangering the underground water supply. Finally, there was no evidence of any planned extension of municipal water or sewer lines into the area to relieve the problem. The commission's concern for the water supply prospects and the sewage disposal qualities of the plaintiff's land was in strict accordance with the duties and powers of the commission under the statute. Cf. General Statutes § 8-2; *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission*, 152 Conn. 7, 10, 202 A.2d 241.

The plaintiff alleged in his assignment of errors that the RA-4 zone classification of the plaintiff's property was unconstitutional because it had no relationship to health, safety, morals or the general welfare, and, for all practical purposes, it was a taking of private property without just compensation and without due process of law. These argu-

ments are not persuasive in this case as it has been developed by the plaintiff. From what has been said it is apparent that the factors of water supply and sewage disposal presented a definite public health question. The claim that a refusal to change the RA-4 zone restrictions amounted to an unconstitutional taking of the property turns on the basic claim that the plaintiff was thus deprived of any use of his property. No objection to the RA-4 zoning of the plaintiff's property had ever been made previous to this application. The property has never been offered for sale. No application for a change of zone to RA-2 or RA-1 has ever been made. The zoning regulations permit, under varying restrictions, detached single-family dwellings, one per lot, in RA-4, RA-2, RA-1 and R-20 zones, unless special exceptions are authorized by the board of appeals. The plaintiff has been denied the right to use the property only under the R-20 restrictions. That it could not economically be used under one or more of the other zone requirements does not appear. The plaintiff claims no present economic hardship and no substantial change in conditions since 1947.

The commission indicates in its decision that it is possible that portions of the land in question may not be RA-4 in character, but that an R-20 zone is not the most appropriate use of all of the land. The commission's denial, while not drawn with a lawyer's precision, is sufficient to cover all of the plaintiff's claims and is amply supported by the record. There has been no confiscation shown and no denial of due process. The courts do not and should not substitute their judgment for that of the local authority. *Zieky* v. *Town Plan & Zoning Commission,* 151 Conn. 265, 267, 196 A.2d 758; *Summ* v. *Zoning Commission,* 150 Conn. 79, 89, 186 A.2d 160; *Cameo*

*Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 677, 192 A.2d 886.

The record fails to demonstrate a classification of the plaintiff's property restricting its use so that it can never be utilized for any reasonable purpose. *Del Buono* v. *Board of Zoning Appeals,* 143 Conn. 673, 678, 124 A.2d 915; cf. *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 267, 205 A.2d 774. There is nothing arbitrary or confiscatory in a zoning commission's leaving property in its previous classification by its denial, on reasonable grounds, of an application for a change. We have said repeatedly that ordinarily no change of zone should be granted unless "some new condition has arisen which substantially alters the character of the area." *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 11, 202 A.2d 241; *Vece* v. *Zoning & Planning Commission,* 148 Conn. 500, 503, 504, 172 A.2d 619; *Nowicki* v. *Planning & Zoning Board,* 148 Conn. 492, 496, 497, 172 A.2d 386; *Kimball* v. *Court of Common Council,* 148 Conn. 97, 101, 167 A.2d 706; *Zoning Commission* v. *New Canaan Building Co.,* 146 Conn. 170, 175, 148 A.2d 330.

We conclude that the commission's denial of the plaintiff's application for a change to an R-20 zone was not shown to be illegal, arbitrary or in abuse of its discretion.

There is no error.

In this opinion the other judges concurred.